Louis D'CAMERA, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, Defendant.

Civ. A. No. 86–3003.

United States District Court,
District of Columbia.

Oct. 11, 1989.

Carlos M. Recio, Robert E. Deso, Greenberg P.C., Washington, D.C., for plaintiffs.

Eugene A. Adams, Asst. Corp. Counsel, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiffs, certain District of Columbia police officers at or below the rank of sergeant, brought this action against the District of Columbia ("the District") for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (1982), *as amended by* Pub.L. No. 99–150 (1985). On June 22, 1988, this court denied the District's motion for partial summary judgment. At the same time, it granted in part plaintiffs' motion for partial summary judgment. *D'Camera v. District of Columbia*, 693

F.Supp. 1208 (D.D.C.1988). Specifically, we held that the District:

1) failed to establish that its police sergeants were exempt from the FLSA's overtime provisions, 29 U.S.C. § 207(*o*);

2) contravened the FLSA's overtime provisions when it "paid" compensatory time off in lieu of monetary overtime benefits from April 15, 1986, to October 1, 1987, in the absence of a provision in the parties' collective bargaining agreement providing for such substitution; and

3) acted lawfully when it substituted compensatory time off for overtime hours expended by plaintiffs for court appearances.

*Id.* at 1216.

The pivotal remaining issue in this case is the precise amount of overtime pay to which plaintiffs are entitled. Plaintiffs have filed two motions addressing this issue. The first is for an award of liquidated damages and a declaration that the District willfully violated the FLSA. The second is for a declaration that the District cannot deduct compensatory time used by plaintiffs against an award of back pay. The court addresses each of these motions in turn.

I. *Plaintiffs' Motion for an Award of Liquidated Damages and a Declaration that the District Willfully Violated the FLSA*

### A. Liquidated Damages

The FLSA provides that "[a]ny employer who violates the provisions of … section 207 … shall be liable to the … employees affected in the amount of … their unpaid overtime compensation, … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Plaintiffs claim they are entitled to liquidated damages in an amount equal to the back pay the District owes them.

The District objects to plaintiffs' claim in two respects only. First, it asserts that plaintiff sergeants are not entitled to liquidated damages. Second, it argues that, if recoverable, liquidated damages are recoverable only from August 1, 1986 to September 27, 1987. For the reasons explained below, we reject both of these arguments.

### 1. *Plaintiff Sergeants' Entitlement to Liquidated Damages*

■ An award of liquidated damages is mandatory unless the District shows to the satisfaction of the court that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA.[1] *See id.* §§ 216(b), 260 (1982); *see also Donovan v. United States Postal Service,* 530 F.Supp. 894, 901 (D.D.C.1981). We previously found that the District failed to prove that plaintiff sergeants were exempt from the FLSA's overtime provisions under the "bona fide administrative employee" exemption, 29 U.S.C. § 213(a)(1). *D'Camera,* 693 F.Supp. at 1210–13. The District now asks us to find that its determination that sergeants were exempt was made in good faith and with reasonable grounds to believe that such a determination did not violate the FLSA.

■ "Good faith" requires " 'an honest intention to ascertain what the … Act requires and to act in accordance with it.' " *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 464 (D.C.Cir.1976) (*quoting Addison v. Huron Stevedoring Corp.,* 204 F.2d 88, 93 (2d Cir.), *cert. denied,* 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953)), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). To meet this test, the District must affirmatively show "a genuine attempt to ascertain what the law require[d], not simply … demonstrat[e] … the absence of bad faith." *Dove v. Coupe,* 759 F.2d 167, 175–76 (D.C.Cir.1985). Moreover, while the test for good faith is subjective, "reasonable grounds" requires that the employer's belief that the offending act complied with the FLSA be *objectively* reasonable. *See Laffey,* 567 F.2d at 464.

---

**1.** Even if the District meets this burden, the court may in its discretion award plaintiffs liquidated damages. 29 U.S.C. § 260 (1982); *see also Laffey v. Northwest Airlines,* 567 F.2d 429, 463–64 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Donovan v. United States Postal Serv.,* 530 F.Supp. 894, 901 (D.D.C.1981).

■ The District claims it "determined, using demonstrable standards," that sergeants were exempt from the FLSA's overtime provisions. Defendant's Opposition to Plaintiffs' Motion for Liquidated Damages at 4. However, our June 1988 decision that District sergeants were not exempt was based on the District's failure to provide any meaningful evidence of such standards. *See D'Camera*, 693 F.Supp. at 1210–11. Unfortunately for the District, it offers no new evidence of these standards now to support its claim of good faith and reasonable grounds. Once again, "[t]he District, apparently deeming its position as being self-evident, has neglected to provide evidentiary support pertinent to the various prongs of the exemption analysis." *Id.* at 1211. Without such evidence, this court cannot conclude that the District's determination was made in good faith and based on reasonable grounds.

Furthermore, we noted in our earlier opinion that, "to claim exempt status under the FLSA, an employer must meet every aspect of the definition for an exempt employee." *Id.* at 1213. Consequently, we found that the District had to show that sergeants were compensated "on a salary basis" as required by 29 C.F.R. § 541.2(e) (1988). *See id.* at 1212. The court concluded that a District sergeant's pay is subject to a deduction system clearly inconsistent with the FLSA's definition of a salaried employee. *See id.* (*citing* 29 C.F.R. § 541.118 (1988)). The District has offered no evidence of whether or why it believed otherwise. Such silence hardly constitutes an affirmative showing of good faith and reasonable grounds.

Based on the preceding paragraphs, we hold that the District has failed to demonstrate to our satisfaction good faith and reasonable grounds for believing sergeants

were exempt from the FLSA. An award of liquidated damages is therefore mandatory. *See* 29 U.S.C. §§ 216(b), 260. Accordingly, we hold the District is liable for liquidated damages to all plaintiffs, including those who are sergeants.[2]

2. *The Period for Which the District is Liable for Liquidated Damages*

■ The District argues that liquidated damages should be awarded only for the time period from August 1, 1986 to September 27, 1987. The latter date does not warrant extended discussion. The District claims that the new collective bargaining agreement, which complies with the FLSA's overtime provisions, became effective on September 27, 1987. Defendant's Opposition to Plaintiffs' Motion for Liquidated Damages at 1. However, the District previously has conceded that the new agreement took effect October 1, 1987. *See* Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment at 1 n. 2. Indeed, in its June 1988 opinion, this court found that October 1, 1987 was the undisputed effective date of the new agreement. We held there that the District violated the FLSA's overtime provisions from April 15, 1986 to October 1, 1987, *D'Camera*, 693 F.Supp. at 1216, and was therefore liable for unpaid overtime compensation for this period. Simply put, it is too late now for the District to challenge this date. We turn now to the operable date.

To decide the date on which liability for liquidated damages begins, we must analyze the 1985 amendments to the FLSA. Early in 1985, the Supreme Court held that the FLSA's minimum wage and overtime provisions applied to state and local governments.[3] *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).[4]

**2.** Plaintiffs contend that the District is collaterally estopped from arguing good faith and reasonable grounds by Judge Hogan's decision in *Harrison v. District of Columbia*, 674 F.Supp. 34 (D.D.C.1987). Plaintiffs' Motion for Liquidated Damages at 7–9. Because we base our holding on other grounds, we find it unnecessary to address this contention. We question, however, whether the same issues of law or fact

were actually and necessarily litigated in *Harrison*.

**3.** The District is included in the FLSA's definition of a "state." 29 U.S.C. § 203(c).

**4.** *Garcia* overruled *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which held that the Commerce Clause did not empower Congress to apply these

Congress, aware that potential hardship might result from immediate implementation of *Garcia*'s mandate, responded with amendments that delayed the Act's application until April 15, 1986. Pub.L. No. 99–150, § 2(c)(1), 99 Stat. 787, 788–89 (1985). The delay was designed to allow state and local governments sufficient time to "make necessary adjustments in their work practices, staffing patterns, and fiscal priorities." S.Rep. No. 159, 99th Cong., 1st Sess. 15 (1985); *see also* H.R.Rep. No. 331, 99th Cong., 1st Sess. 27 (1985), U.S.Code Cong. & Admin. News 1985, 651, 663.

In addition, and central to our discussion here, section 2(c)(2) of the 1985 amendments authorized state and local governments to defer until August 1, 1986, actual payment of compensation for overtime worked after April 14, 1986. Pub.L. No. 99–150, § 2(c)(2), 99 Stat. 787, 789. The only purpose of this provision was to accommodate the fiscal years of many state and local governments. The House Report states: "[B]ecause many state and local governments begin their fiscal years on July 1, the amendments allow actual payment of monetary overtime compensation to be delayed until August 1, 1986 *without penalty. Liability, however, in all instances will commence on April 15, 1986.*" H.R.Rep. No. 331, *supra,* at 27 (emphasis added); *see also* S.Rep. No. 159, *supra,* at 15.

Based on section 2(c)(2) and the House Report, the District argues that liquidated damages are not recoverable against *any* employer for the period from April 15 to August 1, 1986. The District would have us interpret section 2(c)(2) as reducing not only the administrative and fiscal burdens of *complying* with the FLSA, but also the penalty the Act imposes on *violators* in the form of mandatory liquidated damages under 29 U.S.C. § 216(b).

The District places great weight on the "without penalty" language in the House Report. This emphasis is misplaced. We read that language to mean that an employer who paid accrued overtime compensation by August 1, 1986, did not violate the FLSA. Any employees compensated by that date were not wronged and thus were not entitled to liquidated damages. The District, however, did not pay accrued overtime compensation by August 1, 1986. Instead, it continuously violated the FLSA's overtime provisions from April 15, 1986, until October 1, 1987.

We find it implausible that Congress intended the result the District would have us reach. Section 2(c)(2) benefitted only those employers who began complying with the FLSA on April 15, 1986, but who deferred payment of compensation until August 1, 1986. For those employers, liability was limited to the payment of unpaid compensation accruing since April 15, 1986, but no more. Section 2(c)(2) had no other effect on the FLSA's mandatory liquidated damages provision, 29 U.S.C. § 216(b). As we have indicated, the District did not comply with the FLSA in a timely manner. Therefore, section 2(c)(2) is not applicable and the District must pay liquidated damages for the full period of violation.

This court is aware that Judge Hogan accepted the District's argument in a factually similar case. In *Harrison v. District of Columbia,* 674 F.Supp. 34 (D.D.C.1987), the District conceded that it violated the FLSA's overtime provisions from April 15, 1986, until September 1987. 674 F.Supp. at 36. While the *Harrison* court awarded back pay for that entire period, it held, without much analysis, that liquidated damages were recoverable only from August 1, 1986, to September 1987. *See id.* at 35–37. For the reasons stated in the paragraphs above, this court declines to follow the result reached in *Harrison.* Accordingly, we hold the District liable for liquidated damages beginning April 15, 1986.

**B. Plaintiffs' Claim that the District Willfully Violated the FLSA**

Plaintiffs also seek a declaration that the District's violation of the FLSA's overtime provisions was willful. The obvious purpose of such a declaration would be to extend the statute of limitations from two years to three years. *See* 29 U.S.C.

provisions to states "in areas of traditional governmental functions."

§ 255(a) (1982). Plaintiffs' cause of action began to accrue on April 15, 1986. This action was filed on October 31, 1986, less than seven months later. Because plaintiffs' claims are well within the two year statute of limitations, there is no need to address an irrelevant issue.

## II. *The District's Deduction of Compensatory Time Against Plaintiffs' Back Pay Awards*

The District distributed back pay awards after this court granted partial summary judgment in favor of plaintiffs in June 1988. Plaintiffs' second motion is for a declaration that the District improperly deducted compensatory time used by plaintiffs in calculating these awards.

The District computed each plaintiff's back pay award as follows: first, it determined the total hours of overtime the plaintiff worked during the violation period; second, it multiplied this number by one and a half times the plaintiff's then hourly wage to arrive at a monetary value of all overtime worked; third, it determined the total hours of compensatory time used by the plaintiff during the violation period; fourth, it multiplied this number by the plaintiff's then hourly wage to arrive at a monetary value of all overtime compensation already received; and fifth, it subtracted the monetary value of compensation received from the monetary value of overtime worked to arrive at the award of back pay. *See* Saylor Aff. at 1–2, Ex. A to Plaintiffs' Motion for a Declaration that Defendant Cannot Deduct Compensatory Time.

The FLSA does not expressly authorize such a deduction, nor does its legislative history offer any guidance. The Act provides that an employer "shall be liable ... in the amount of ... unpaid overtime compensation," 29 U.S.C. § 216(b), but it does not specify how this amount should be determined. Moreover, the permissibility of the District's method appears to be an issue of first impression before the courts.

Plaintiffs proffer two rationales for their argument that the District's deduction of compensatory time used was improper. First, they point to the District's policy requiring employees to use compensatory time within nine to twelve months after earning it. Employees who did not use the time within this period "lost" their overtime compensation forever. Plaintiffs' Motion for a Declaration that Defendant Cannot Deduct Compensatory Time at 2–3. Plaintiffs claim this policy precludes the District from arguing that plaintiffs used compensatory time "for their own benefit," since plaintiffs had no choice but to use it. Plaintiffs' Reply to Defendant's Opposition at 3.

Second, plaintiffs argue that the FLSA precludes the deduction. Plaintiffs do not offer any direct authority for this argument, and as we noted above, there apparently is none to be found. Instead, plaintiffs cite numerous cases that purportedly indicate a policy against the set-off the District took here.

The District essentially argues that, although its overtime compensation policy violated the FLSA, plaintiffs who took compensatory time received something of monetary value. It claims that a payment of monetary compensation at "time and a half" for all overtime earned, regardless of how much compensatory time was used, would unfairly penalize the District and award plaintiffs a windfall not intended by the FLSA. Plaintiffs who took compensatory time would recover full monetary compensation for those same overtime hours.

We conclude that the District's method of computing the back pay awards was fair and permissible under the Act. Plaintiffs who used compensatory time unquestionably received partial compensation for their overtime hours. In calculating the back pay awards, the District did not treat compensatory time used as *full* compensation. Rather, it determined that time off was worth two-thirds of the monetary compensation to which plaintiffs were entitled for each hour of overtime worked. We think this valuation was fair and equitable. Plaintiffs are entitled to be made whole,

not to a windfall at the District's expense.[5] In addition to receiving a back pay award, each plaintiff will receive an equal amount in liquidated damages. These awards adequately compensate plaintiffs for the District's violation of the FLSA.

We agree with the District that the cases plaintiffs cite do not support their argument. *See* Defendant's Opposition to Plaintiffs' Motion for a Declaration that Defendant Cannot Deduct Compensatory Time at 4–7. In fact, some bolster the District's position and the one we adopt today. For example, plaintiffs cite *EEOC v. O'Grady*, 857 F.2d 383, 391 (7th Cir. 1988), for its reasoning that an employer who violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1982 & Supp. V 1987), could not "pay less than it would have paid had it acted lawfully." That case involved an employer who unsuccessfully sought to deduct pension benefits, a collateral source, from back pay awards. The *O'Grady* court reasoned that, *as between employer and employees*, employees should enjoy any windfall that resulted from the fact that they received both an award of back pay and pension benefits during the period of unlawful termination. *See O'Grady*, 857 F.2d at 391. As an example of the collateral source doctrine, *O'Grady* does not apply. In the present case, the District in no way received a windfall from a collateral source by deducting compensatory time from the back pay awards. Unlike the employer in *O'Grady*, who did not directly provide the pension benefits, the District "paid" plaintiffs compensatory time during the period of violation. By crediting the value of that time toward the total amount of overtime compensation earned, the District was not, as plaintiffs maintain, "attempting to enforce its illegal policy through the back door." Plaintiffs' Reply to Defendant's Opposition at 7. It simply and legitimately wanted to avoid paying for something twice.

*O'Grady* subsequently was cited in a decision that further undermines plaintiffs' position. In *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198 (7th Cir.1989), the Seventh Circuit stated that an employer liable for front pay under the ADEA was "entitled to a set-off for the difference between the amount [in pension benefits] the employee *did* receive and the amount he *would have* received but for his unlawful termination." 870 F.2d at 1210 (*citing O'Grady*). While these cases are not binding on this court, we think they indicate the proper approach to back pay awards under the FLSA. The District was entitled to deduct the monetary value of compensatory time used against the total amount of overtime compensation earned during the period of violation.

### Conclusion

For the foregoing reasons, this court holds that:

1) the District is liable for liquidated damages to all plaintiffs, including plaintiff-sergeants;

2) the District is liable for back pay and an equal amount in liquidated damages for the period April 15, 1986, to October 1, 1987;

3) whether the District willfully violated the FLSA's overtime provisions is not germane to plaintiffs' cause of action; and

4) the District, in arriving at back pay awards, properly deducted the monetary value of compensatory time used, computed at each plaintiff's then hourly wage, from the total amount of overtime compensation earned during the violation period.

Accordingly, plaintiffs' motion for an award of liquidated damages and for a declaration that the District violated the FLSA must be granted with respect to the

---

5. The collateral source rule, which focuses on what the employer and collateral source should pay, and not on what the employee should receive, allows employees "to be made more than whole for wrongs committed against them." *EEOC v. O'Grady*, 857 F.2d 383, 390 (7th Cir. 1988); *see also NLRB v. Gullet Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951). But the present case does not involve a collateral source, because the District funded both the compensatory time and the back pay awards.

liquidated damages claim and denied without prejudice with respect to the balance of their claim. In addition, plaintiffs' motion for a declaration that the District cannot deduct compensatory time used against an award of back pay must be denied.

An order consistent with the foregoing has been entered this day.